**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AJAMU OSBORNE,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:16-cv-01651

MICHAEL W. CAREY, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court, among other matters, are Plaintiff Ajamu Osborne's Application to Proceed without Prepayment of Fees and Costs (the "IFP application"), (ECF No. 1), Motion for Reconsideration of the Order reassigning this case, (ECF No. 9), Motion for Recusal of the undersigned district judge, (ECF No. 32), and most recent Motion to Amend the Complaint, (ECF No. 31). Also pending are Defendants Michael Carey and S. Benjamin Bryant's Motion to Dismiss, (ECF No. 37), and Motion to Seal supporting exhibits, (ECF No. 35).

For the reasons that follow, the Court **DENIES** the Motions for Reconsideration and for Recusal. Plaintiff's Motion to Amend will be **GRANTED**. Upon initial screening, Plaintiff's Amended Complaint, as modified by the Supplemental Complaint, is **DISMISSED** as frivolous, for failure to state a claim, and for want of jurisdiction. The IFP application is, therefore, **DENIED**. The Motion to Dismiss is **GRANTED** to the extent it seeks dismissal of this litigation. The Motion to Seal is similarly **GRANTED**. These rulings either moot or compel the denial of

nearly all the other motions that remain outstanding in this case.[1]

## I.     BACKGROUND

Plaintiff, a federal inmate proceeding pro se, brings this lawsuit against several of his former attorneys, the lead Assistant United States Attorney on his case, and the former United States Attorney for this district.   His claims arise from his February 3, 2015 conviction upon guilty plea to possession with intent to distribute a quantity of oxycodone.   The undersigned district judge presided over the criminal proceedings and sentenced Plaintiff to a term of incarceration of 70 months, followed by a three-year term of supervised release.   (*See* Judgment Order, ECF No. 124, Criminal Action No. 2:12-cr-00155.)   On December 7, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Plaintiff's conviction and sentence.   *United States v. Osborne*, 629 Fed. App'x 559 (4th Cir. 2015).   In the proceedings before the district court and on appeal, Plaintiff met the indigence requirement for appointment of counsel.

In his initial pleading, Plaintiff named as defendants three of the six criminal defense attorneys appointed to represent him during the protracted criminal proceeding: Michael Carey, S. Benjamin Bryant, and Troy Giatras.   (Compl. 1, ECF No. 2.)   The Complaint alleged violations of Plaintiff's civil rights under 42 U.S.C. § 1983, legal malpractice, accounting fraud, unjust enrichment, and ethical violations, all arising from Plaintiff's dissatisfaction with the outcome of his criminal case and, in many cases, renewing arguments litigated before this Court in the context

---

[1] Specifically, these are Plaintiff's Motion for Summons, (ECF No. 16), Motion for Scheduling Order, (ECF No. 17), Motion for Appointed Expert Lists, (ECF No. 22), Motion to Strike Defendants Carey and Bryant's initial Motion to Dismiss, (ECF No. 23), Motion to Intervene, (ECF No. 27), Motion to Amend the Complaint, (ECF No. 29), Motion to Withdraw the Motion to Amend, (ECF No. 30), Motion to Dismiss Defendants' Motion to Dismiss, (ECF No. 41), Motion to Strike Defendants' Motion to Dismiss, (ECF No. 43), Petition to Refer to Mediation, (ECF No. 51), and Defendants Carey and Bryant's Motion for Protective Order, (ECF No. 19), and initial Motion to Dismiss, (ECF No. 20).

of his motion to withdraw his plea of guilty.   Plaintiff has since filed two motions to amend his initial Complaint.   (ECF Nos. 29, 31.)   In view of the liberal standard for amendment of pleadings, Fed. R. Civ. P. 15(a), the most recent of these motions will be **GRANTED**.   The Court will treat the Amended Complaint filed August 15, 2016, as modified by the "Supplement[al] Complaint," (ECF No. 31-1), as the operative pleading in this matter.[2]

Plaintiff names additional defendants in the Amended Complaint.   He adds Monica D. Coleman, the lead Assistant United States Attorney on Plaintiff's case, R. Booth Goodwin, II, former United States Attorney for the Southern District of West Virginia, and Brian D. Yost and Gregory Campbell, two other attorneys appointed to represent Plaintiff during the course of the criminal proceeding.   Chief and most sensational of Plaintiff's amended claims is an alleged conspiracy to violate civil rights, purportedly brought under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.   Plaintiff also brings state law breach of contract, accounting malpractice, legal malpractice, unjust enrichment, and fraudulent concealment claims against his former attorneys, and as well as a § 1983 supervisory liability claim against Defendant Goodwin.

As stated previously, Plaintiff's IFP application remains pending.   In a lawsuit initiated by a prisoner, it is the practice of the Court not to order service on the defendants until after the Court performs initial screening.   This case presents somewhat of an anomaly, however, because immediately after filing his original Complaint, Plaintiff took the initiative to obtain and serve waiver of summons forms on Defendants Carey and Bryant.   On June 1, 2016, Defendants Carey and Bryant executed the forms and thereby waived their right to service of a summons in this action.   (ECF Nos. 14, 15.)   While it is unclear from the docket whether Plaintiff attempted to

---

[2] Henceforth, the Court uses the term "Amended Complaint" in reference to the Amended and Supplemental Complaints collectively.

obtain similar waivers from the remaining defendants, Defendants Carey and Bryant are the only defendants to have executed them.   Together, Defendants Carey and Bryant have filed two motions to dismiss, first directed at the Complaint and later, the Amended Complaint.[3]   Plaintiff has moved to strike or, alternatively, dismiss the Motions to Dismiss.   (ECF Nos. 23, 41, 43.) Plaintiff's motions do not identify grounds for relief under Rule 12(f), but rather set out arguments in opposition to those posited by Defendants Carey and Bryant.   Fed. R. Civ. P. 12(f) (allowing the court to strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter).   Accordingly, the Court construes Plaintiff's Motions to Strike and to Dismiss as responsive memoranda and will otherwise deny the relief sought therein.

This case was initially assigned to United States District Judge John T. Copenhaver, Jr. The Clerk of the Court reassigned the case to the undersigned upon recognition of its relation to Plaintiff's criminal proceeding.   Plaintiff immediately filed a motion to reconsider the transfer, followed by a motion to recuse the undersigned district judge.    The Court addresses the motions to reconsider and for recusal before proceeding to screen the case.

## II.    Motion for Recusal

Title 28 U.S.C. § 455 governs disqualification of federal district court judges. In pertinent part, the section reads:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

---

[3] Defendants Carey and Bryant also filed an accompanying Motion to Seal exhibits filed in support of the Motion to Dismiss.   (ECF No. 35.)   The two exhibits at issue are different versions of Plaintiff's presentence investigation report prepared in Criminal Action No. 2:12-cr-00155.   By their nature, these reports contain confidential information not meant for public disclosure.   *See* L.R. Crim P. 32.2(a) (requiring the Clerk of the Court to file presentence investigation reports under seal). The Motion to Seal is therefore **GRANTED**.

4

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455.   The test for recusal is an objective one.   *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003).   "The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *Id.* The fact that a judge ruled adversely against the movant in a related proceeding does not warrant recusal, *see United States v. Parker*, 742 F.2d 127, 128–29 (4th Cir. 1984), and a judge is not required to recuse himself for nothing more than "unsupported, irrational or highly tenuous speculation." *Cherry*, 330 F.3d at 665 (citing *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998)).

Plaintiff's recusal motion is premised on a number of fanciful allegations.   Plaintiff first claims that the undersigned has "personal knowledge of the disputed evidentiary facts concerning these proceeding[s]."   (Mot. for Recusal at 1, ECF No. 32.)   Though Plaintiff does not specify the grounds for his belief nor the evidence to which he refers, the Court assumes that Plaintiff alludes to the Court's administration over an adversarial evidentiary hearing on Plaintiff's motion to withdraw his guilty plea in the criminal case.

Some factual background is in order.   From the time he first appeared before this Court to enter a plea of guilty, Plaintiff maintained suspicions that the Government would seek to enhance his sentence with evidence unconstitutionally obtained.[4]   At some point during the preparation of

---

[4] The Court first became aware of Plaintiff's misgivings about the case during the plea hearing, when Plaintiff demonstrated marked concern about his ability to challenge evidence relating to relevant conduct. The Court informed Plaintiff that he would waive his right to move to suppress any evidence by entering a plea of guilty.   The Court eventually paused the proceedings to allow Plaintiff to confer with his attorney. Upon reconvening of the hearing and after conceding that the evidence at issue was not of the type that Plaintiff had standing to seek to suppress on Fourth Amendment grounds, Plaintiff proceeded to enter a guilty plea to the single-count indictment.   (*See* Trans. of Plea Hearing held Sept. 17, 2012, Crim. Action No. 2:12-cr-00155, ECF No. 42.)

5

the pre-sentence investigation report, his suspicions ripened into a theory that the Metropolitan Drug Enforcement Network Team ("MDENT") mishandled evidence and failed to maintain an adequate chain of custody for controlled substances attributed to Plaintiff as relevant conduct. Unhappy with the way his various defense attorneys championed these arguments, Plaintiff moved for the appointment of new counsel four times.   As the pool of available Criminal Justice Act ("CJA") panel members with sufficient experience to deal with such a client shrank, the Court turned to Defendant Carey, a non-panel attorney, to represent Plaintiff.   Mr. Carey quickly took up Plaintiff's cause.   He filed a motion to withdraw the guilty plea on Plaintiff's behalf and doggedly pursued his client's theories during a two-day evidentiary hearing.   In the end, Plaintiff's arguments were unavailing.   The Court denied the motion to withdraw the guilty plea on August 14, 2014.

The Court now turns to the arguments supporting recusal.   Plaintiff's contention that the Court has personal knowledge of disputed facts at issue in this civil action is simply untrue.   For purposes of § 455(b)(1), personal knowledge must come from an extrajudicial source.   *United States v. Davis*, 529 Fed. App'x 375, 378 (4th Cir. 2013); *see In re Kensington Intern. Ltd.*, 368 F.3d 289, 308 n. 18 (3d Cir. 2004) ("'[P]ersonal' or 'extrajudicial knowledge' . . . leaves no trace in the record and cannot be controverted or tested by the tools of the adversary process." (quoting *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996))).   The undersigned's knowledge of the facts relating to this case comes only from serving as the presiding judge in Petitioner's criminal case. The Court's unfavorable rulings in the criminal matter are not a basis for recusal either. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).   Again, such bias must generally be shown by

reference to an extrajudicial source, or by circumstances showing "deep-seated favoritism or antagonism." *Id.*

Where Plaintiff does allege bias stemming from an extrajudicial source, his allegations border on the outlandish. Plaintiff's claim that the Court "either aided Monica Coleman in the ethics violations committed in this Court or was a first-hand eyewitness to ethics violations practice[d] by a member of the Court" lacks a shred of evidentiary support. The same goes for Plaintiff's allegation that the undersigned has a "financial interest" in this controversy. Federal district judge salaries are established by Congress and are not augmented by forfeiture proceeds. *See* 28 U.S.C. § 135. Finally, as Defendant Carey points out, Plaintiff's contention that Defendant Carey was a former supervisor of the undersigned at the Office of the United States Attorney for the Southern District of West Virginia is a fabrication. The undersigned was never an employee of that office, much less a subordinate of Defendant Carey's. The law is clear: a judge must not recuse himself for "imaginary reasons" such as these. *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001).

Finally, Plaintiff does not win his motion because he filed a complaint against the undersigned in the United States District Court for the District of Columbia.[5] A judge is not required to disqualify himself "merely because a litigant sues or threatens to sue him." *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977). Indeed, "[S]uits against public officials

---

[5] That lawsuit, incidentally, was dismissed for failure to state a claim upon which relief can be granted. *Osborne v. United States Dist. Court*, No. 1:15-cv-02144-UNA (D.D.C. Feb. 3, 2016) (dismissing Plaintiff's suit under the Privacy Act because "[a] federal court is not an "agency" for purposes of the Privacy Act . . . and all of the named defendants are exempt from its application"). Plaintiff also alleges that he filed an administrative claim against the undersigned. (ECF No. 32.) Plaintiff has provided no proof of his administrative claim. However, any administrative claim against the undersigned would not be grounds for recusal for the reasons discussed herein.

are common and a judge would likely not harbor bias against someone simply because the person named him in a meritless civil suit." *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005).

The Court can find no basis for recusal in Plaintiff's allegations, nor for transfer of the case back to Judge Copenhaver.   Given the undersigned's familiarity with Plaintiff's criminal case, reassignment of the case promoted the conservation of judicial resources.    Under the circumstances, the Court finds that transfer to have been entirely proper.   Further, the Court finds that a reasonable person, fully informed with knowledge of Plaintiff's criminal case, would not believe the undersigned's objectivity to be in question.   The Court **DENIES** the motions for recusal and to reconsider.

## III.    The "Three-Strikes" Rule

The Court begins by addressing an argument raised in Defendants Carey and Bryant's Motion to Dismiss.   These defendants argue that this action should be dismissed, in part, because Plaintiff has previously filed three or more civil actions that have been dismissed as frivolous, malicious, or for failure to state a claim. The Prison Litigation Reform Act of 1995 ("PLRA") provides:

> In no event shall a prisoner bring a civil action under this section [relating to proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action . . . in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see also Ashley v. Dilworth*, 147 F.3d 715, 716–17 (8th Cir. 1998) ("Section 1915(g) denies the installment payment method to those prisoners who have had three previous cases or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted ("three strikes").")

8

Defendants Carey and Bryant argue that the sanction for filing repeated unmeritorious lawsuits is dismissal.   On this point, they are mistaken.   The PLRA's three-strikes sanction is not dismissal of an action, but denial of the plaintiff's application to proceed in forma pauperis. Further, Plaintiff's previous filings have been evaluated to determine whether they count as "strikes," as Defendants suggest.   *Osborne v. Chief United States Fire Marshal*, No. 3:16-cv-1050-M-BH, 2016 WL 6962535 (N.D. Tex. Nov. 28, 2016), *appeal docketed*, No. 16-11800 (5th Cir. Dec. 22, 2016); *Osborne v. United States Marshal*, 4:16-cv-947 (N.D. Ohio July 1, 2016); *Osborne v. United States Dist. Court*, No. 1:15-cv-02144-UNA (D.D.C. Feb. 3, 2016); *Osborne v. Murphy*, 171 Fed. App'x 969 (4th Cir. 2006); *Osborne v. United States*, 136 Fed. App'x 5 88 (4th Cir. 2005); *Osborne v. LaManna*, No. C A 804-1444-24BI, 2005 WL 4751201 (D.S.C. Mar. 23, 2005).

Of all the cases identified by Defendants Carey and Bryant, only two—the Texas and District of Columbia cases—definitively count as strikes.   *Chief United States Marshal*, 2016 WL 6962535, at *1 (adopting recommendation of magistrate judge to dismiss the case until Plaintiff satisfied the conditions of *Heck v. Humphrey*, 512 U.S. 477 (1994)); *Osborne v. United States Dist. Court*, No. 1:15-cv-02144-UNA (D.D.C. Feb. 3, 2016) (dismissing Plaintiff's Privacy Act claims for failure to state a claim).   Notably, the Texas dismissal counts as a strike even though the case remains pending on appeal.   *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 ("A prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal.").

For various reasons, the other cases are not included in the § 1915(g) tally.   *Osborne v. United States*, 136 Fed. App'x 588 (4th Cir. 2005) was a habeas proceeding filed under 28 U.S.C.

§ 2255 to which the three-strikes rule does not apply.  *Osborne v. LaManna*, No. C A 804-1444-24BI, 2005 WL 4751201 (D.S.C. Mar. 23, 2005), was also a habeas case, in this instance filed pursuant to 28 U.S.C. § 2241.  Although normally § 2241 cases do not count as PLRA strikes, an exception is made where a civil rights claim is filed under the guise of a habeas proceeding.  In such a case, the dismissal of a § 2241 petition will count as a strike.  *See Brown v. Mills*, 639 F.3d 733, 734 (6th Cir. 2011); *Owens-El v. United States*, 49 Fed. App'x 247, at *2 (10th Cir. 2002) (citing *Jennings v. Natrona Cty. Det. Ctr. Med. Facility*, 175 F.3d 775, 779 (10th Cir. 1999)). Plaintiff's claims in *LaManna*, however, challenged the execution of the sentence he was then serving and thus, were properly considered under § 2241.  2005 WL 4751201, at *7 (considering allegations of a denial of procedural due process in connection with prison disciplinary proceedings).

The Ohio case also does not count as a strike.  For one, the Ohio case originated from the Texas case, No. 3:16-cv-1050-M-BH.  Plaintiff filed the civil action in the Northern District of Texas, where the district court construed the complaint as containing a habeas corpus claim pursuant to 28 U.S.C. § 2241 and transferred that claim to the Northern District of Ohio, the district within which Plaintiff is incarcerated.  The Ohio district court later concluded that Plaintiff had disavowed any claim for relief under § 2241 and dismissed its portion of the case. *Osborne v. United States Marshal*, 4:16-cv-947 (N.D. Ohio July 1, 2016).

The case that presents the closest question is *Osborne v. Murphy*, 171 Fed. App'x 969 (4th Cir. 2006).  There, the Fourth Circuit upheld the District of South Carolina's order denying relief on a *Bivens* action filed by Plaintiff.  In that case, Plaintiff sued a number of employees of the Federal Bureau of Prisons alleging violations of his constitutional rights.  An inspection of the

10

district court's order reveals that the District of South Carolina dismissed the action after construing the defendants' motion to dismiss as a motion for summary judgment.   The Fourth Circuit has held that entry of summary judgment in favor of the defense may count as a strike for § 1915(g) purposes.   *Blakely v. Wards*, 738 F.3d 607, 617 (4th Cir. 2013).   To have such an effect, the summary judgment dismissal must "explicitly deem[] the terminated action frivolous, malicious, or failing to state a claim."   *Id.*

In *Murphy*, the district court's order did not reference § 1915, nor did it state that Plaintiff's claims were frivolous, malicious, or failed to state a claim. *Osborne v. Murphy*, No. 8:04-2368-MBS (D.S.C. Sept. 7, 2005). The district court's order centered on its finding that the various defendants were entitled to qualified immunity, an affirmative defense.   *Id.* at 5.   Because *Blakely* emphasized the importance of express language by the adjudicating court before a summary judgment dismissal evidences a PLRA strike, this Court concludes that the *Murphy* order does not count against Plaintiff.   Plaintiff is hereby cautioned, however, that with the dismissal in this case he has almost certainly amassed three strikes under § 1915.

#### IV.    Initial Screening and Motion to Dismiss

As directed by 28 U.S.C. § 1915(e)(2)(B), the Court must screen each case in which a plaintiff seeks to proceed in forma pauperis and must dismiss the case if the Complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who enjoys immunity from such relief.   This screening occurs prior to consideration of an Application to Proceed In Forma Pauperis and, at least theoretically, before service of the defendants.  Of course, because Defendants Carey and Bryant have elected to participate in this

action prior to the completion of the initial screening, the Court also considers their arguments in favor of dismissal.

A complaint is frivolous "where it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Nagy v. FMC Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004) (explaining the word "frivolous," though "not susceptible to categorical definition," was meant to "confer on district courts the power to sift out claims that Congress found not to warrant extended judicial treatment under the in forma pauperis statute" (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994))).   Conversely, a complaint fails to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.   A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing][the] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555, 570.

The Court is required to liberally construe pro se complaints.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id.* (quoting *Estelle v. Gamble*,

12

429 U.S. 97, 106 (1976)).   This liberality is particularly appropriate where, as here, the pro se

complaint raises civil rights claims.   *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (citing

*Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009)).   Still, the Court may not "rewrite a petition to

include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir.

1998), or "construct a party's legal arguments for him," *Small v. Endicott*, 998 F.2d 411, 417–18

(7th Cir. 1993) (citation omitted).   *See also Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–

69 (11th Cir. 2014) ("[E]ven in the case of pro se litigants this leniency does not give a court

license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in

order to sustain an action." (emphasis and citation omitted)).

Finally, the Court is obligated to scrutinize its own subject matter jurisdiction in this and

every case.   *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir.

2004) ("[Q]uestions of subject-matter jurisdiction may be raised at any point during the

proceedings and may (or, more precisely, must) be raised *sua sponte* by the court.").   Rule

12(h)(3) of the Federal Rules of Civil Procedure directs that a court "must dismiss" an action "[i]f

the court determines at any time that it lacks subject-matter jurisdiction."   Fed. R. Civ. P. 12(h)(3).

A.     *Conspiracy to Violate Civil Rights and Equal Protection Claim (Count I)*

In Count I, Plaintiff alleges an ongoing conspiracy between MDENT,[6] the United States

Attorney's Office for the Southern District of West Virginia, and, to a lesser extent, Plaintiff's

criminal defense attorneys.   Plaintiff describes an elaborate scheme, devised by Defendant

---

[6] Plaintiff has not named MDENT as a party to this action.

13

Goodwin, to frame Plaintiff for crimes he now, apparently, claims he did not commit.[7]   Count I

begins:

> In July 2012 in an unconstitutional pattern, practice[,] and custom that has been
> adopted in the Southern District of WV[,] Attorney Booth Goodwin agreed to
> prosecute Plaintiff along with a host of other African American victims in a revenue
> generating scheme.

(Am. Compl. ¶ 22.)   Plaintiff initially learned of the conspiracy on November 3, 2011, when

MDENT allegedly targeted him for a race-based traffic stop.[8]   (*Id.* ¶ 2.)   He claims that MDENT

officers planted a small amount of marijuana inside his vehicle to justify the search and seizure of

the vehicle's contents.   Plaintiff goes on to allege that on May 29, 2012, MDENT "planted

narcotics in African-American lab submissions that were not seized from them in an attempt to

subject them to greater criminal liability than what they were responsible for." (*Id.* ¶ 4.)

MDENT's infractions did not end there:

> In order to get the planted evidence approved to be submitted in suspects lab
> submissions that were not seized from them[,] MDENT officers criminally forged
> Ms. Coleman's name to State drug accounting ledgers, th[e]n created false police
> reports indicating that the planted evidence belonged to Osborne[.]

(*Id.* ¶ 5.)

Plaintiff claims that Defendant Coleman aided and abetted MDENT by "assisting officers

in evading subpoena orders to testify concerning missing drug evidence," by allowing officers to

forge her name on the false lab reports, and by committing any number of otherwise unidentified

---

[7] The Court is unable to discern from Plaintiff's scattered allegations whether Plaintiff believes that law enforcement fabricated the evidence supporting his offense of conviction, the evidence attributed to Plaintiff as relevant conduct, or both.   As alleged, the wide-ranging scope of the conspiracy leads the Court to conclude that Plaintiff's claims implicate the offense of conviction in addition to relevant conduct.

[8] Plaintiff was indicted in the underlying criminal action on July 17, 2012, for possessing with intent to distribute oxycodone on June 25, 2012.   It is unclear how this traffic stop, assuming it actually occurred, relates to his conviction.

"ethical violations."   (*See* Am. Compl. ¶ 25.)   For their part, Plaintiff's attorneys failed to defend the criminal case to Plaintiff's satisfaction.   Their actions—failing to file pretrial motions and "intentionally omitt[ing] pertinent facts from the record on direct appeal," for example—are all proof, in Plaintiff's view, of their complicity in the conspiracy.   (*Id.* ¶¶ 24, 26, 27.)

Plaintiff's conspiracy allegations are both internally inconsistent and incredible, lending support to the Court's suspicion that this conspiracy exists only in Plaintiff's imagination.   From the outset, Plaintiff has trouble defining the objective of the conspiracy.   As alleged, it appears to have been two-fold.   First, the defendants were motivated by racial hostility.   Plaintiff avers that the United States Attorney's Office ("USAO") purposefully targeted African Americans, such as Plaintiff, for prosecution in federal court, knowing they would receive harsher sentences compared to their white counterparts sentenced in West Virginia state court.   Second, financial interests allegedly played a part.   Plaintiff claims that the USAO had an "equitable sharing business agreement" with MDENT and "CJA panel attorneys."   (Am. Compl. ¶¶ 7, 26.)   Plaintiff does not explicitly state how this agreement generated revenue; however, Plaintiff appears to believe that MDENT, the USAO, and his defense attorneys split the drug proceeds confiscated from African American suspects.   Plaintiff does not identify any African American suspect, other than himself, who was allegedly targeted by this scheme, nor does he identify any white suspect who received more lenient treatment.   Plaintiff demands damages against all defendants up to the maximum available under "insurance policy limits." (Am. Compl. 7.)

Though Count I obviously sets forth a claim for conspiracy, the Court cannot determine whether Plaintiff meant to include additional causes of action within Count I.   The heading to Count I contains two lines of text in all capital letters.   The first reads "COUNT I § 1988,"

followed on the next line by the words: "CONSPIRACY TO VIOLATE 42 U.S.C. § 1981, § 1983, § 1985, § 1986 EQUAL PROTECTION CLAIM."   (Am. Compl. at 4.)   Of the statutory provisions referenced, only § 1985 provides a cause of action for conspiracy in these circumstances.[9]   *See* 42 U.S.C. §1985.   Even if Plaintiff intended to bring claims under §§ 1981, 1983, and 1988, however, these claims are not viable under the facts alleged.   Plaintiff also seems to allege an equal protection claim, the merits of which will be discussed below.

Section 1981 "protects the equal right of 'all persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."   *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. §1981(a)).   The statute defines the phrase "make and enforce contracts" to "include[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."   § 1981(b).   As stated in *Domino's Pizza*, relief under § 1981 depends upon allegations of racial discrimination that either "block[] the creation of a contractual relationship" or "impair[] an existing contractual relationship."   546 U.S. at 476.

The Amended Complaint does not mention any contract specifically, and the only relevant contract of which the Court is aware is Plaintiff's plea agreement.[10]   Since Plaintiff successfully

---

[9] The Court acknowledges that a conspiracy to violate civil rights may, in appropriate circumstances, be remediable under § 1983. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (describing a plaintiff's burden in establishing a § 1983 conspiracy). The Court treats Plaintiff's conspiracy claim as a § 1985 conspiracy for two reasons.   Unlike a § 1983 conspiracy, § 1985 does not necessarily require state action on the part of conspirators.   Further, Plaintiff alleges a conspiracy designed to discriminate against criminal suspects on the basis of race—in other words, precisely the type of conspiracy for which § 1985 explicitly provides means of redress.

[10]  Plaintiff has not attached his plea agreement, nor any contract for legal representation, to the pleadings. The Court may take judicial notice of the plea agreement, filed on the public docket in Plaintiff's criminal case.   (ECF No. 25., Crim. Action 2:12-cr-00155); *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (finding a federal court may take judicial notice of matters of public record).

16

executed the plea agreement, any claim under § 1981 must necessarily arise from the performance

of that contract.   *See* § 1981(b).   But Plaintiff fails to identify any interference with his right to

performance under the plea agreement, much less interference connected to racial animus.   The

Amended Complaint is replete with general allegations that Plaintiff's counsel rendered deficient

performance in a number of ways.   Assuming the truth of these allegations, however, they still do

not bear any rational relationship to the execution of Plaintiff's plea agreement.   Perhaps Plaintiff

refers not to the plea agreement, but to a private contract for legal representation.   He vaguely

asserts, for example, that each of his attorneys "entered into a valid enforceable contract" with

him.   (*See* Am. Compl. ¶¶ 29, 31, 33.)   Still, he has offered nothing more than this conclusory

allegation to support the existence of such a contract and the Court is left without means to consider

the legal sufficiency of a related § 1981 claim.   Accordingly, the Amended Complaint fails to

state a claim under § 1981.

Section § 1983 is likewise inapplicable to Plaintiff's suit.   This statute provides redress for

constitutional violations committed by persons acting under color of state law.   42 U.S.C. § 1983.

Defendants Booth and Coleman are federal, not state actors, and Plaintiff's private defense

attorneys are not treated as state actors simply because they practice law in West Virginia courts.

*See Polk Cty. v. Dodson*, 454 U.S. 312, 317 (1981) ("[A] lawyer representing a client is not, by

virtue of being an officer of the court, a state actor "under color of state law" within the meaning

of § 1983.").   As argued in the motion to dismiss filed by Defendants Carey and Bryant, any §

1983 claim must be dismissed for want of state action.

Nor does Plaintiff state a claim under § 1988.   "[S]ection 1988 does not create independent

causes of action, it simply 'defines procedures under which remedies may be sought in civil rights

actions.'" *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988) (quoting *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)); *see Johnson v. Ryder Truck Lines, Inc.*, 575 F.2d 471, 474 (4th Cir. 1978) ("Section 1988 in itself does not create any cause of action, but it instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts." (internal quotation marks and citation omitted)).

This leaves the conspiracy claim, brought ostensibly under §§ 1985 and 1986,[11] and the equal protection claim.   Section 1985 applies to conspiracies to violate civil rights.   Plaintiff does not specify upon which subparagraph of §1985 he bases his conspiracy claim; however, the first portion of § 1985(3) seems most applicable based on the allegations presented.   *See* 42 U.S.C. § 1985(1) (prohibiting conspiracies to prevent a federal officer from performing his or her duties or from accepting such office); § 1985(2) (applicable to conspiracies to obstruct the course of justice, including the intimidation of a party, witness, or juror).

Plaintiff's § 1985(3) claim is likewise deficient.   Section 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

---

[11] "A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."   *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).   Because the Court determines the § 1985(3) claim cannot go forward, Plaintiff likewise fails to state a claim under § 1986.

42 U.S.C. § 1985(3).   The statute creates no substantive rights; rather, it provides a means of redress for the violation of rights found elsewhere.   *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).   Here, Plaintiff alleges a conspiracy between his defense counsel and federal prosecuting attorneys to violate the equal protection rights of African Americans prosecuted within this district.   Section 1985(3) does not appear to be well-suited to address this type of conspiracy.   While the scope of § 1985(3) is "considerably broader" than § 1983 in that it does not require proof of state action, *Federer v. Gaphardt*, 363 F.3d 754, 758 (8th Cir. 2004) (citation omitted), the statute is rarely invoked against federal actors, and even more rarely is it used to target a mix of federal and private conduct.   In fact, it appears that no case exists recognizing a § 1985(3) conspiracy composed exclusively of federal and private actors.[12]

Assuming a cause of action exists under § 1985(3) to address a conspiracy of this type, and putting aside the Court's misgivings about the adequacy of the factual allegations supporting the conspiracy, Plaintiff's suit to recover damages for an allegedly unconstitutional conviction is

---

[12] Clearly, §1985(3) recognizes private conspiracies, and the statute is frequently invoked to impose liability for private conduct.   *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (Finding, after reviewing statutory text and legislative history, that "all indicators . . . point unwaveringly to s[ection] 1985(3)'s coverage of private conspiracies.").   Plaintiff does not allege a purely private conspiracy, however. Instead, he alleges a conspiracy between private defense attorneys and federal prosecutors.   Although there is some precedent for extending the reach of § 1985(3) to federal conduct, the Fourth Circuit has never found the reach of § 1985(3) to extend so far. *But see Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) (citing *Hobson v.* Wilson, 737 F.2d 1, 19–20 (D.C. Cir. 1984), *overruled in part on other* grounds, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163 (1993)) (finding conspiracies composed of federal employees are within the scope of §1985(3)).   Within the Fourth Circuit and elsewhere, conspiracies composed of private and federal actors are typically addressed in accordance with the common law doctrine set forth in *Bivens v. Six Unnamed Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).   Here, the Court need not labor over the question of whether to designate Plaintiff's conspiracy claim as arising under § 1985 or *Bivens*.   The rule pronounced in *Heck v. Humphrey*, 512 U.S. 477 (1994), discussed below, bars Plaintiff's conspiracy claim whether it is framed as a § 1985 or *Bivens* action.   *See Poston v. Shappert*, 222 Fed. App'x 301, at *1 (4th Cir. 2007) (per curiam) (citing *Stephenson v. Reno*, 28 F.3d 26, 26–27 & n. 1 (5th Cir. 1994) (applying *Heck* to bar § 1985 or, alternatively, *Bivens* claim).

barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under this rule, a plaintiff cannot pursue a civil rights claim for damages that, if successful, would necessarily imply the invalidity of a prior conviction, unless the plaintiff can show that his criminal conviction has already been invalidated. *Id.* at 486–87. In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* (footnote omitted). Though *Heck* was a § 1983 case, the rule it announced is equally applicable to claims under § 1985(3). *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097 n. 4 (9th Cir. 2004) ("We agree with our sister circuits that *Heck* applies equally to claims brought under §§ 1983, 1985, and 1986." (citing *Lanier v. Bryant*, 332 F.3d 999, 1005–06 (6th Cir. 2003); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999))); *see also Poston*, 222 Fed. App'x at *1 ("Poston's complaint raises challenges to his underlying criminal conviction. Because Poston has made no showing that his conviction has been reversed, expunged, declared invalid by a state court, or called into question by a federal court's issuance a writ of habeas corpus, we find that his claims are not cognizable under § 1983 or under 42 U.S.C. § 1985(3).").

In this case, the allegations underlying Plaintiff's conspiracy claim necessarily implicate the validity of his criminal conviction. He claims that investigatory officials mishandled evidence

and forged drug laboratory reports, that federal prosecutors purposefully targeted African American drug suspects for prosecution, and that his defense attorneys somehow received monetary kickbacks from the federal government for sabotaging Plaintiff's case.   If true, these claims demonstrate violations of Plaintiff's Fourth and Sixth Amendment rights, let alone his due process rights under the Fifth Amendment.   These claims must be addressed first by way of habeas review.  *See Holmes v. Dreyer*, 431 F.3d. App'x 69, 70–71 (3d Cir. 2011) ("[I]n the circumstances presented, Holmes's claims regarding prosecutorial misconduct, malicious prosecution, and ineffective assistance of counsel imply the validity of his conviction and thus are not cognizable under *Heck*.").

Further, Plaintiff has not demonstrated that his federal conviction, upon which he continues to serve time, has been declared unlawful or invalidated.   Plaintiff's recent filing of a federal habeas petition challenging the validity of his federal conviction only underscores the conclusion that his civil claims are not ripe for adjudication.   Plaintiff filed a motion pursuant to 28 U.S.C. § 2255 on February 21, 2017, and the proceedings initiated by that motion have hardly begun. Therefore, the Court must dismiss Count I without prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

Finally, the Court addresses Plaintiff's alleged equal protection violation.   Liberally construed, the Amended Complaint brings a race-based selective prosecution claim.  *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("The requirements for a selective-prosecution claim draw on ordinary equal protection standards . . . . To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." (citations omitted)); *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) ("The

equal protection component of the Fifth Amendment's Due Process Clause forbids the government from deciding to prosecute based on a defendant's race." (citations omitted)). As stated above, a selective prosecution claim brought pursuant to §1983 cannot proceed against federal actors. The claim is more appropriately addressed under *Bivens*, a common law counterpart to § 1983.

In any event, Plaintiff's selective prosecution claim is similarly barred by *Heck*. Though it is unclear whether Plaintiff believes he was actually innocent of the crime for which he was convicted, the practical effect of a judgment in his favor would be to invalidate the judgment order resulting in his confinement. *Omegbu v. Milwaukee Cty.*, 326 Fed. App'x 940, 942–43 (7th Cir. 2009) ("A decision here that Omegbu was selectively prosecuted would mean that his conviction was unlawful[.]" (citing *United States v. Armstrong*, 517 U.S. 456, 463–64 (1996))); *Rogers v. Ill. Dep't of Corr. Special Evaluation Unit*, 160 F. Supp. 2d 972, 977 (N.D. Ill. 2001) ("We cannot imagine . . . any set of facts under which a court could conclude that the plaintiffs were confined in violation of their equal protection rights, yet find that their confinement was nonetheless valid."); *see also Armstrong*, 517 U.S. at 463 ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). Plaintiff is precluded from bringing this claim until he receives a favorable ruling calling into question the validity of his federal conviction.

As alluded to earlier, the practice in the Fourth Circuit is to dismiss *Heck*-barred claims as frivolous, without prejudice. *Russell v. Guilford Cty. Municipality*, 599 Fed. Appx. 65, at *1 (4th Cir. 2015) (per curiam) (finding *Heck* barred plaintiff's § 1983 complaint and upholding district court's dismissal of the complaint as frivolous pursuant to 28 U.S.C. § 1915A(b)(1)); *Wilson v. Sheriff Dep't*, No. 7:10-cv-00363, 2010 WL 3292654, at *2 (W.D. Va. Aug. 19, 2010) (dismissing

22

without prejudice as frivolous under *Heck* (citing *Omar v. Chasanow*, 318 Fed. App'x 188, 189 (4th Cir. 2009) (per curiam))); *see also Omar*, 318 Fed. App'x at 189 (modifying district court's dismissal with prejudice under *Heck* to reflect that dismissal is without prejudice to plaintiff refiling upon favorable termination of conviction).   Dismissal in these circumstances counts as a strike for purposes of 28 U.S.C. § 1915(g).   *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (dismissal of prisoner's action as frivolous, without prejudice, counts as a strike within the meaning of the PLRA's three-strikes rule).

> C.     *Supervisory Liability under 42 U.S.C. § 1983 (Count VII)*

Because Count VII provides the only alternative basis for federal question jurisdiction, the Court turns to Plaintiff's supervisory liability claim next.   In Count VII, Plaintiff alleges a § 1983 supervisory liability claim against Defendant Goodwin.   This claim alleges, in its entirety:

> Defendant Goodwin II.   As supervisor to Defendant Coleman had actual knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff.
> Goodwin['s] response to [sic] once Plaintiff made him aware of the ethics breach was so inadequate in allowing her to continue prosecuting with no pause even while she is being investigat[ed] by the Office of Disciplinary Counsel (see attached). Shows a deliberate indifference to the violations or tacitly authorizes the alleged offensive practices.
>
> There is an affirmative casual [sic] link between the control environment pressure to meet fiscal earning goals that encourages these acts[,] errors[,] omissions in order to secure convictions however unethical means[.]

(Am. Compl. ¶ 62.)   Because Defendant Goodwin's actions were taken, if at all, under color of federal law, § 1983 is inapplicable.   A *Bivens* action is the more appropriate vehicle for this claim. *Hartman v. Moore*, 547 U.S. 250, 254 n. 2 (2006) (Although "more limited in some respects," *Bivens* provides the federal analog to an action against state or local officials under § 1983.)

23

The Supreme Court has dramatically narrowed, if not eliminated supervisory liability claims under *Bivens*.  *Iqbal*, 556 U.S. at 677.  As the *Iqbal* Court observed, "the term 'supervisory liability' is a misnomer" in the context of a *Bivens* action because a supervisor is only liable for his or her own unconstitutional conduct.  *Id.*; *see also id.* at 693 ("Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating . . . supervisory liability entirely." (Souter, J., dissenting)). Thus, following *Iqbal*, a plaintiff claiming invidious discrimination on the part of a supervisor must show that the supervisor acted "for the purpose of discriminating on account of race, religion, or national origin." *Id.*  A theory of deliberate indifference, as Plaintiff alleges here, will not suffice.  *Id.* at 676 ("[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences. . . . It instead involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, the action's effects upon an identifiable group." (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotation marks omitted)). Although Plaintiff alleges that Defendant Goodwin had "actual knowledge" of Defendant Coleman's conduct, he fails to suggest that this defendant's actions were in any way motivated by racial animus.   As such, Plaintiff fails to state a claim for supervisory liability under *Bivens*.

> D.  *State Law Claims for Breach of Contract, Accounting Malpractice, Legal Malpractice, Unjust Enrichment, and Fraudulent Concealment (Counts Two through Six)*

The Court must now consider whether it retains jurisdiction over Plaintiff's remaining state-law claims.   Since the parties are arguably domiciled in different states, diversity jurisdiction is in issue.[13] A federal district court has original jurisdiction over cases between citizens of

---

[13] In the absence of diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over Counts Two through Six.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has

24

different states where the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).   The burden of proving subject matter jurisdiction rests on Plaintiff.   *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008).   The Court will assume complete diversity exists in this case, though Plaintiff's allegations in this regard are deficient.[14]   Nevertheless, the Court can definitively conclude that Plaintiff has not alleged a sufficient amount in controversy, and it is upon this requirement that the Court bases its decision to dismiss these claims.

When determining the amount in controversy, the "sum claimed by the plaintiff controls." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (citing *St. Paul Mercury Indent. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).   The difficulty here is that Plaintiff has not specified the amount in controversy, nor does he state in general terms that the amount in controversy exceeds $75,000.   Plaintiff merely declares that he seeks a judgment "within insurance policy

---

original jurisdiction."); *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (emphasizing district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been distinguished" (citation omitted)).

[14] For purposes of federal diversity jurisdiction, an individual is a citizen of the state in which he or she is domiciled.   *Johnson v. Advance Am.*, 549 F.3d 932, 937 n. 2 (4th Cir. 2008).   Domicile requires physical presence in connection with an intent to remain in a particular State.   *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citation omitted).   Plaintiff does not include allegations regarding the domicile of each defendant.   Instead, he summarily states that "Osborne and Defendants are in different States currently." (Am. Compl. ¶ 18.)   This statement may be sufficient to establish residency, but it does not establish domicile.   *Johnson*, 145 F.3d at 663 ("State citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." (citation and internal quotation marks omitted)).   Plaintiff may also assume that he is domiciled in Ohio, the state where he is incarcerated. Such an assumption would be incorrect.   Inmates are presumed to retain the domicile they had prior to their incarceration, *Roberts v. Morchower*, 956 F.2d 1163, at *1 (4th Cir. 1992) (per curiam) (citing *Polakoff v. Henderson*, 370 F. Supp. 690 (N.D. Ga. 1973)), and Plaintiff's presentence investigation report suggests that Plaintiff is a domiciliary of New York.   Since Plaintiff does not appear to be domiciled in West Virginia, however, this distinction ultimately makes little difference.

limits." (Am. Compl. 7.) This vague allegation does not establish an amount in controversy. Furthermore, Plaintiff's damages, if any, do not appear to be amenable to reasonable calculation. The only dollar amounts specified in the Amended Complaint are $5000 that Plaintiff alleges MDENT illegally seized from his vehicle during the traffic stop and $15,000 Plaintiff claims he forfeited during the criminal proceeding. (Supp. Compl. ¶ 59.) Even if the latter sum excludes the former—a point left obscure by the Amended Complaint—$20,000 falls far below the jurisdictional threshold. Plaintiff's pleadings also raise the inference that he seeks to recover legal fees paid to his attorneys on his behalf. (*See id.* ¶ 58.) Plaintiff does not specify the amounts paid his attorneys, nor does he identify a percentage of the aggregate amount to which he claims entitlement. In any case, since these attorneys were appointed to represent Plaintiff due to his indigency, Plaintiff did not pay their fees and has no right to recover them.

Having found Plaintiff fails to satisfy the amount in controversy requirement of 28 U.S.C. § 1332, the Court finds that it lacks subject matter jurisdiction over the claims alleged in Counts II, III, IV, V, and VI of the Amended Complaint. These claims are dismissed without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (ECF No. 9), and Motion for Recusal, (ECF No. 32), are **DENIED**. The Court **GRANTS** Plaintiff's Motion to Withdraw his Motion to Amend, (ECF No. 30), and **DENIES AS MOOT** Plaintiff's first Motion to Amend (ECF No. 29). The Court **GRANTS** Plaintiff's second Motion to Amend (ECF No. 31), and accordingly **DENIES AS MOOT** Defendants Bryant and Carey's Motion to Dismiss the Complaint (ECF No. 20) and Plaintiff's Motion to Strike the Motion to Dismiss, (ECF No. 23).

Following initial screening of the operative Amended Complaint, the Court **DENIES** Plaintiff's IFP application, (ECF No. 1), and **DISMISSES** the Amended and Supplemental Complaints, (ECF Nos. 31, 31-1).   The Court therefore **DENIES** Plaintiff's Motion for Summons, (ECF No. 16), Motion for Scheduling Order, (ECF No. 17), and Motion for Appointed Expert Lists, (ECF No. 22).   The Court also **DENIES** the Motion of "the Unassociated 33 Phoenix Foundation," an entity purportedly organized by Plaintiff, to intervene. (ECF No. 27.)   The Court **GRANTS** Defendants Bryant and Carey's Motion to Dismiss the Amended and Supplemental Complaints (ECF No. 37), insofar as these defendants request dismissal of this lawsuit, and **GRANTS** the accompanying Motion to Seal exhibits attached to the Motion to Dismiss.   (ECF No. 35.)   Plaintiff's motions to strike the motion to dismiss the Amended Complaint, which the Court construes as responses to Defendants Bryant and Carey's motion, are **DENIED**. (ECF Nos. 41, 43.)   Plaintiff's Petition to Refer Matter to Mediation is **DENIED AS MOOT**. (ECF No. 51.)

Accordingly, this civil action is **DISMISSED WITHOUT PREJUDICE** and is **ORDERED REMOVED** from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 8, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE